UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUSTOM FOODS OF AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA GARLIC COMPANY, INC.; <br> ARGEE MANUFACTURING COMPANY OF SAN DIEGO, INC., <br><br> Defendants <br><br> ──────────────────────── <br><br> AND RELATED COUNTERCLAIMS, CROSSCLAIMS, AND THIRD-PARTY CLAIMS. | Case No.: 24cv0575-LL-DDL <br><br> **ORDER GRANTING MOTION TO AMEND COMPLAINT** <br><br> [ECF No. 76] |

Before the Court is Plaintiff Custom Foods of America, Inc.'s ("Custom Foods") Motion to Amend Complaint. ECF No. 76 ("Motion" or "Mot."). Third-Party Defendant Producers Meat and Provision, Inc. doing business as Tarantino Wholesale Food Distributor ("Tarantino") and Defendant California Garlic Company, Inc. doing business as Garlic King ("Garlic King") (collectively "Defendants") jointly filed an Opposition [ECF No. 97 ("Opposition" or "Oppo.")], and Custom Foods filed a Reply [ECF No. 100 ("Reply")]. The Court finds this matter suitable for determination on the papers and without

1

oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the Motion.

## I. BACKGROUND

On March 26, 2024, Custom Foods filed a complaint against Argee Manufacturing Company of San Diego, Inc. ("Argee") and Garlic King for damages incurred when plastic particles were discovered in its food product. ECF No. 1. Garlic King supplied garlic to Custom Foods, and Argee manufactured the buckets alleged to be the source of the plastic particles, which was used to store garlic. *Id.* ¶¶ 9, 23, 35, 37. On April 23, 2024, Garlic King filed a counterclaim against Custom Foods for breach of contract and a crossclaim against Argee for indemnity, alleging that if Garlic King is found to be liable to Custom Foods, "any legal responsible conduct on the part of Garlic Foods was of a secondary and passive nature, while the legally responsible conduct of Argee who supplied packaging to Garlic King, was primary and active." ECF No. 7; *id.* ¶ 13. On May 14, 2024, Argee filed a crossclaim against both Garlic King and Tarantino for indemnity, alleging that each "are responsible for the acts, omissions and and/or occurrences hereinafter alleged, and/or proximately caused and contributed to the various damages referred to herein" and that "cross-defendants, and some of them, were the agents, servants and employees of some of the other cross-defendants and were acting within the scope of said agency, authority, and employment."[1] ECF No. 12; *id.* ¶¶ 4–5. On May 29, 2024, Garlic King and Tarantino jointly answered Argee's crossclaim. ECF. No. 17.

Custom Foods' counsel attests that "[d]uring the eighteen-month period in which Custom Foods tried to resolve its dispute with Garlic King and Argee without litigation, Custom Foods and its counsel understood Garlic King to be the entity responsible for

---

[1] As a new party, Tarantino is technically a third-party defendant. *See* Fed. R. Civ. P. 14(a)(1). However, Argee refers to both Garlic King and Tarantino as cross-defendants. ECF No. 12. For ease of reference, the Court will refer to Argee's claims against Garlic King and Tarantino as a crossclaim.

packaging the garlic in question" and were informed by Garlic King that Tarantino was an owner of Garlic King. ECF No. 76-3, Declaration of Shayne R. Clinton ("Clinton Decl."), ¶¶ 6–7.

On July 10, 2024, the magistrate judge issued a Scheduling Order Regulating Discovery and Other Pretrial Proceedings ("Scheduling Order"). ECF No. 24. In it, the deadline to file a motion to join other parties, to amend the pleadings, or to file additional pleadings was August 15, 2024. *Id.* at 2.[2] The Scheduling Order also directed that three "sides" would exist for the purposes of discovery: (1) Custom Foods, (2) Garlic King and Tarantino, and (3) Argee. *Id.* The Court explained that "discovery limitations shall apply in this case to the number of discovery requests that each 'side' may propound on any other 'side'" for the purposes of interrogatories and requests for admission. *Id.*

On July 30, 2024, Custom Foods served its First Request for Production of Documents to Garlic King. Clinton Decl. ¶ 9. Custom Foods defined Garlic King to include Tarantino for purposes of its discovery requests served on Garlic King. *Id.* ¶ 8. On August 6, 2024, Custom Foods served its First Set of Interrogatories to Garlic King. *Id.* ¶ 10.

On September 16, 2024, the parties served written discovery responses and produced documents. *Id.* ¶ 11. Following discovery disputes and a motion to compel filed by Custom Foods against Garlic King/Tarantino and Argee, the Court ordered Garlic King and Argee to produce all remaining documents by November 18, 2024. ECF No. 62. "During [Custom Foods'] review of documents produced prior to the Court-ordered November 18, 2024 production by Garlic King/Tarantino," an email between Garlic King's counsel and its insurer indicated that Tarantino—not Garlic King—was responsible for packaging the garlic that Garlic King sold to Custom Foods. Clinton Decl. ¶ 16. In a response to an interrogatory that was served on Custom Foods on September 16, 2024, Garlic King and Tarantino stated that "Producers Meats' employees visually inspected each Argee bucket

---

[2] Pincite page citations for filings on the docket refer to the court-generated CM/ECF page numbers located at the top of each page.

before it was manually filled and sealed." *Id*. ¶ 17; ECF No. 97-1, Declaration of Evan J. Armstrong ("Armstrong Decl."), ¶ 16.

In its First Request for Production of Documents to Garlic King, Custom Foods requested "all documents related to your relationship to [Tarantino], including any corporate governance documents," to which Garlic King asserted various objections and stated that "it is not aware of, and after a reasonable search and diligent inquiry, this Responding Party has not located any documents responsive to this request." *Id*. ¶ 18.

On November 26, 2024, Custom Foods met and conferred with counsel for Garlic King and counsel for Argee about its intention to seek leave to amend its complaint, and both Garlic King and Argee declined to agree to Custom Foods' request to amend its complaint. *Id*. ¶ 19.

On December 4, 2024, Custom Foods filed the instant Motion to amend its complaint to assert claims against Tarantino. ECF No. 76.

## II.   LEGAL STANDARD

Once a party has served its pleading, there is a short period of time when the party may amend it once as a matter of right. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with written consent from the opposing party or permission from the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. This policy should be applied with "extreme liberality" to reflect the underlying purpose of Rule 15 "to facilitate decision on the merits, rather than on the pleadings or technicalities."[3] *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Prejudice to the opposing party is the factor that carries the greatest

---

[3] Citations of rules in this order refer to the Federal Rules of Civil Procedure, unless otherwise stated.

1  weight. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The
2  party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd.
3  v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

4      However, once a Rule 16 scheduling order is issued, dates set forth therein may be
5  modified only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see
6  also* ECF No. 24 at 7 (stating that dates and times will not be modified except for good
7  cause shown). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad
8  faith of the party seeking to interpose an amendment and the prejudice to the opposing
9  party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party
10 seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th
11 Cir. 1992). "If that party was not diligent, the inquiry should end." *Id.* After a party first
12 shows good cause under Rule 16(b) to amend a pleading after the deadline specified in the
13 scheduling order, then the court may consider whether amendment under Rule 15 is proper.
14 *Id.* at 608.

15 **III.  DISCUSSION**

16     Custom Foods seeks leave to amend its complaint to assert its claims for breach of
17 implied warranty of merchantability, breach of implied warranty of fitness, fraudulent
18 concealment, negligence, and strict liability against Tarantino. Mot. at 25. Custom Foods
19 claims that documents produced in discovery showed that "contrary to Custom Foods'
20 prior understanding and Garlic King's allegations, Tarantino was not just a corporate
21 affiliate of Garlic King" and "instead played a key role in the manufacturing of and
22 shipping of the contaminated garlic to Custom Foods." Mot. at 8.

23     Defendants argue that Custom Foods was not diligent in seeking amendment, that
24 this Motion comes after undue delay, and that it would prejudice Tarantino if granted.
25 Oppo. at 5–9.

26     **A.  Good Cause Pursuant to Rule 16(b)**

27     The Court finds Custom Foods was reasonably diligent in seeking leave to amend
28 its complaint. When it filed its complaint, Custom Foods believed Garlic King packaged

the garlic at issue. Garlic King's crossclaim against Argee asserted that Argee supplied the packaging to Garlic King, with no mention of Tarantino. Although Argee brought claims against third-party Tarantino and Garlic King, neither the crossclaim nor Tarantino and Garlic King's response indicated that Tarantino manufactured and packaged the garlic. Two and a half weeks after the Scheduling Order was issued setting deadlines for discovery as well as motions to amend the pleadings, Custom Foods served its first request for production of documents to Garlic King, which expressly included Tarantino for purposes of discovery. This included a request for documents regarding the relationship between Garlic King and Tarantino, indicating they were seeking information on their connection. The interrogatory response—indicating that Tarantino's employees visually inspected the buckets before they were filled—that alerted Custom Foods to Tarantino's involvement was served on September 16, 2024, a month after the deadline for filing a motion to amend had passed. It is unclear to the Court when the email between Garlic King's counsel and its insurer—indicating Tarantino packaged the garlic—was served on Custom Foods, but it appears to be sometime between September 16, 2024 and November 17, 2024.

Although Custom Foods did not meet and confer with counsel for Garlic King and Argee about amending its complaint until November 26, 2024, the Court does not find this delay to be unreasonable. During this gap in time between discovery of evidence of Tarantino's role and the meeting of counsel regarding amendment, Custom Foods demonstrated that it was diligently pursuing discovery. Custom Foods met and conferred with counsel for Garlic King/Tarantino or Argee regarding discovery issues and disputes on September 19 and 20, 2024, and October 11 and 14, 2024. Clinton Decl. ¶¶ 12, 14. On October 21, 2024, Custom Foods submitted motions to compel further responses to its first request for production to both Garlic King/Tarantino and Argee. ECF Nos. 42, 43. The magistrate judge subsequently granted in part and denied in part Custom Foods' motions to compel and ordered Garlic King and Argee to produce documents and other information by November 18, 2024. ECF No. 62. The Court finds it reasonable that Custom Foods spent this short period of time investigating and gathering sufficient evidence to assert its

claims against Tarantino. Reply at 2, 6; *DCD Programs, Ltd.*, 833 F.2d at 187 & n.4 (finding a party's delay in naming a new defendant reasonable because they "waited until they had sufficient evidence of conduct upon which they could base claims of wrongful conduct"). Custom Foods filed its motion for leave to amend only one week after it met and conferred with opposing counsel.

The Court finds Custom Foods was reasonably diligent in seeking to amend its complaint to add Tarantino as a new defendant and thus has shown good cause to amend after the deadline has passed. *Johnson*, 975 F.2d at 609.

### B.  Factors for Rule 15 Amendment

Custom Foods contends that it meets all five factors that courts consider in deciding a motion for leave to amend under Rule 15. Mot. at 21–26. Defendants argue that two of them are not met: undue delay and prejudice. Oppo. at 7.

#### 1.  Undue Delay

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).

For all the reasons discussed above in deciding diligence and good cause under Rule 16(b), the Court finds Custom Foods was not aware of Tarantino's role in the manufacturing and packaging of the garlic when it filed its complaint and did not unduly delay in moving to amend the complaint to add Tarantino as a defendant. *See supra* Section III.A.

#### 2.  Prejudice

Defendants argue that Tarantino will suffer substantial prejudice if leave to amend is granted because written discovery will be forced open again and additional discovery requests will be served, which will add time and expense and potentially delay trial. Oppo. at 8–9.

The Court finds Defendants have not shown they will incur substantial prejudice. Tarantino is already a party in this case and has been a participant in discovery from the

beginning with Custom Foods defining Garlic King to include Tarantino for purposes of its discovery requests. *See Cervantes v. Zimmerman*, No. 17-CV-1230-BAS-NLS, 2019 WL 1129154, at *14 (S.D. Cal. Mar. 12, 2019) ("Prejudice is minimal when the proposed amendment is consistent with discovery that has already occurred."). Custom Foods asserts it "will likely not serve any—or if it does only very limited as needed—new written discovery requests solely to Tarantino, and depositions importantly can proceed forward without any interruption." Mot. at 24. To the extent that discovery is prolonged, part of that is due to Tarantino's own actions. Despite Tarantino being expressly included in the definition of "you" for written discovery to Garlic King, Custom Foods states that Defendants' counsel for the first time on December 20, 2024 asserted "that the responses to Custom Foods' first set of interrogatories and requests for production did not include information within the knowledge of Tarantino." Reply at 5; Clinton Decl. ¶ 13.

Additionally, the proposed amended complaint does not fundamentally change the nature of the case. The claims and factual allegations in the proposed amended complaint are substantively the same. *See* ECF No. 76-2 (proposed amended complaint with changes marked). Custom Foods proposes asserting the same claims against Tarantino as Garlic King, with whom it has been paired with for discovery purposes, except for the addition of strict liability which is currently asserted against Argee. *Id.* The Court agrees with Custom Foods' argument that the strict liability claim arises from the same facts as alleged in the original complaint "and is merely an alternate theory of liability consistent with Custom Foods' other claims." Reply at 7. The Court does not find the increased cost, time, and discovery would be so great as to prevent amendment in this situation where Tarantino is already a party to the case, has been participating in discovery for four of the five proposed claims, the strict liability claim is closely aligned with the other claims, and the proposed amendments will not change the nature of the case. *See Zoe Mktg., Inc. v. Impressons, LLC*, No. 14cv1881 AJB (WVG), 2015 WL 12216341, at *4 (S.D. Cal. June 1, 2015) (finding no prejudice where proposed new defendants were already involved parties to the litigation, had participated in discovery, and the proposed claim did not change the nature of the case).

### 3. Weighing Factors

The Court finds no evidence of bad faith, futility of amendment, or previous amendment by Custom Foods. The Court also finds no undue delay and no substantial prejudice. Acknowledging that prejudice is the factor that bears the most weight, the Court finds its assessment of the factors to weigh in favor of granting leave to amend.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Custom Foods' Motion to Amend Complaint. The Court notes that in its December 17, 2024 Order granting Defendant Argee's motion to dismiss with leave to amend, it directed Custom Foods not to file a First Amended Complaint to correct the noted deficiencies until the Court ruled on the instant Motion to Amend Complaint. ECF No. 89 at 12–13.

On or before **February 13, 2025**, Custom Foods shall file an amended complaint incorporating the rulings of this Order and the December 17, 2024 Order. Custom Foods shall abide by the undersigned's Civil Chambers Rules, section 3.K., requiring that "[a]ny amended pleading—not just those accompanying a motion for leave to amend—must be accompanied by a redline [version] showing how the amended pleading differs from the operative pleading."

**IT IS SO ORDERED**.

Dated: January 30, 2025

Honorable Linda Lopez
United States District Judge